Charles H. Nehls v. Commissioner.
Charles H. Nehls v. Commissioner
Docket No. 16441.
United States Tax Court
1949 Tax Ct. Memo LEXIS 256; 8 T.C.M. (CCH) 195; T.C.M. (RIA) 49054; February 25, 1949
*256 On the record, held, the purported sale of certain merchandise by petitioner to his wife was not made pursuant to a bona fide transaction entered into at arm's length. The respondent's determination that the profit resulting from a resale thereof was the income of petitioner is sustained. Arthur L. Evely, Esq., Penobscot Bldg., Detroit, Mich., for the petitioner. Wesley A. Dierberger, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves a deficiency in income and victory tax for the calendar year 1943 in the amount of $9,212.80. The sole issue is whether the gain realized from the sale of certain gasoline tank caps and adapters, allegedly made by petitioner's wife, is taxable to petitioner. The case was submitted on a stipulation consisting of exhibits, and oral testimony. Findings of Fact Petitioner, Charles H. Nehls, operated a sole proprietorship under the name of Wayne Metalcraft Company, in Detroit, Michigan. Petitioner's income tax returns for the years 1942 and 1943 were filed with the collector of internal revenue for the District of Michigan at Detroit, on the cash basis. The Wayne Metalcraft *257 Company was established in 1939 by petitioner. It engaged in the manufacture and sale of locking gasoline tank caps and adapters used for converting the caps into locking devices for spare tires on automobiles. It also made and sold padlocks, bicycle locks and chains. These products were sold through wholesale outlets and sales were made to large auto accessory wholesalers. Originally the locking fuel tank caps were made out of a zinc die casting. At the beginning of 1942, due to scarcity of metal, the caps were made out of plastic material. Approximately 40,000 plastic caps were sold to the Firestone Tire and Rubber Company, which proved to be unsatisfactory. On May 26, 1942, Firestone wrote to petitioner directing the cancellation of specified releases for locking gas tank caps in accordance with "our phone conversation." Under date of May 26, 1942, petitioner confirmed the cancellation in accordance with request of May 26, 1942. On May 27, 1942, petitioner wrote to the Bethlehem Equipment Corporation, Ltd., of New York City, in part as follows: "I have been trying to get you on the telephone for the past two days but you were not at home or at the office. If possible, would *258 like to have you come to Detroit to go over the gas cap situation. Jim Hogson would also like to see you before you call on Mallory, if you decide to come. If you cannot make a trip at this time, call me on the phone 'collect' and we can discuss the details. "I would like to have you stock a large quantity of caps in your warehouse as there is a question whether a manufacturer can deliver from warehouse due to War Production Board restrictions. Please keep this entire matter confidential." Prior to January 2, 1942, the Wayne Metalcraft Company was indebted to Mrs. A. Germer for $5,500, for which amount it had given its promissory note secured by a second mortgage on the home owned by petitioner and his wife, Mary W. Nehls, in their joint names. Both petitioner and his wife executed the mortgage. There was a first mortgage on the home, which mortgage was executed by petitioner and his wife. On January 2, 1942, petitioner's wife loaned him $5,500, for which she received a promissory note signed by the Wayne Metalcraft Company and petitioner individually. The proceeds of the loan were used to discharge the second mortgage held by Mrs. Germer. On March 2, 1942, Mrs. Nehls loaned petitioner *259 an additional $2,000, whereupon the note for $5,500 was cancelled and a new note for $7,500, similarly executed, payable one year after date, with interest at six per cent, was delivered to Mrs. Nehls. Although both of the aforesaid notes bore interest, no interest was paid thereon during the year 1942. Mrs. Nehls did not require security for the $5,500 note, but requested security for the $7,500 note, whereupon the following agreement was entered into: "SALES AGREEMENT "THIS AGREEMENT made by and between Wayne Metalcraft Co. and Mary W Nehls. "As security for note in amount of $7,500.00 given to Mary W. Nehls, the Wayne Metalcraft Co. agrees to transfer title to forty thousand (40,000) plastic locking gas caps to Mary W. Nehls. "It is further agreed that should this merchandise become worthless or necessary to sell for less than face amount of note, that the Wayne Metalcraft Co. pay Mary W. Nehls the difference between sale and value and $7,500.00. "It is further agreed that Mary W. Nehls has the option to hold this merchandise for one year. At the end of one year the merchandise will be accepted as full payment of note, or title to merchandise reverts to Wayne Metalcraft *260 Co. upon payment of fact value of note "WAYNE METALCRAFT CO. "Signed: Charles H. Nehls "Signed: Mary W. Nehls" A week or two subsequent to the execution of the foregoing agreement the 40,000 gas tank caps were moved from the factory to the garage of the Nehls' home, a distance of about 75 feet. The Wayne Metalcraft Company continued to produce a first grade plastic cap and enjoyed a good business in such caps in 1942. William H. Davidson was president of the Bethlehem Equipment Corporation, Ltd., which company was a distributor for various automobile accessory manufacturing houses. The Bethlehem Company had sold gas tank caps for the Wayne Metalcraft Company prior to 1942, and sold plastic gas caps for it during January through July 1942. Bethlehem sometimes purchased products of the Wayne Metalcraft Company outright, and sometimes sold its products on a commission basis. Mrs. Nehls had known Davidson prior to 1942. He had called the Nehls' home many times by telephone. Davidson contacted petitioner about the 40,000 defective gas tank caps, and was informed they had been sold to Mrs. Nehls. Davidson thereupon called upon Mrs. Nehls, and she agreed to sell the caps to him. *261 The date this arrangement was completed is not fixed. Among the stipulated exhibits are copies of bills of lading covering the shipment of various amounts of gas tank caps and adapters to the Bethlehem Equipment Corporation, Ltd., on dates commencing with June 12, 1942, and continuing on various dates to July 16, 1942, indicating the shipper to be M. W. Nehls (Mrs. Nehls). Invoices covering these shipments to the Bethlehem Equipment Corporation, Ltd., bear similar dates and carry the heading "M. W. Nehls, 16614 Harper Avenue, Detroit, Michigan." Mr. Alvey, a shipping clerk employed by the Wayne Metalcraft Company, handled these shipments. Under date of June 29, 1942, the Wayne Metalcraft Company invoiced to "Mary W. Nehls" 22,500 #145 adapters for a total price of $2,362.50. A check for that amount was drawn by "Mary W. Nehls" on October 12, 1942, on a joint account entitled "Charles H. Nehls or Mary W. Nehls." The promissory note dated March 2, 1942, given to Mary W. Nehls, for $7,500, bears across its face "cancelled June 30, 1942." Under date of December 16, 1942, the Wayne Metalcraft Company invoiced to "M. W. Nehls" 11,832 locking gas caps for the total amount of $5,916. *262 On December 17, 1942, this company invoiced to "M. W. Nehls" 780 "Misc. lot gas caps" for the total amount of $390. These two invoices total $6,306. On January 20, 1943, Mary W. Nehls drew a check for $6,306 on the joint account entitled "Charles H. Nehls or Mary W. Nehls." Mrs. Nehls inherited $20,000 from her father's estate in 1929. At the beginning of 1941 she had a balance of $468.63 in a savings account in a Detroit bank. Her only other account was a checking account in the Commonwealth Bank with less than $1,000 deposited. On June 19, 1941, Mrs. Nehls received a final payment from her father's estate of $8,000, which she deposited in her savings account. On September 23, 1942, Mrs. Nehls had $25,534.06 in her savings account. This account she closed, and opened a joint savings account with her husband with an initial deposit of $25,534.06. In October, 1942, Mrs. Nehls and her husband opened a joint checking account with the moneys taken from the joint savings account. A check in excess of $4,000 was drawn on the joint checking account to pay off the first mortgage on the home held in the joint names of petitioner and his wife. With some of the money received from the sale *263 to the Bethlehem Equipment Corporation, Ltd., Mrs. Nehls bought some bonds which she thought had been taken in the joint names of herself and her husband, but didn't just remember. Mrs. Nehls, in her income tax return for 1942, reported a net profit of $15,147.13 on the above described transactions. In the year 1943 she reported no income, but apparently filed a return because of the provisions of the Current Tax Payment Act of 1943 The respondent determined that the gain of $15,147.13, reported by Mrs. Nehls for the year 1942, was includable in the income of petitioner for 1942. As a result of the provisions of the Current Tax Payment Act of 1943, this determination created the deficiency of $9,212.80 involved in this proceeding. Opinion The sole issue presented involves the propriety of the respondent's action in including in petitioner's gross income the profit derived from certain transactions whereby petitioner's wife purchased from petitioner certain merchandise which she purportedly sold to the Bethlehem Equipment Corporation, Ltd. The basis of the respondent's determination is that the transactions between petitioner and his wife were without substance and a mere arrangement *264 for the division of income. The question is one of fact, with the burden upon petitioner of establishing that the arrangement was bona fide. Petitioner was engaged in the manufacture and sale of gasoline tank caps, adapters and other products, under the name of the Wayne Metalcraft Company, a sole proprietorship. In January 1942, petitioner's wife, Mary W. Nehls, had loaned to petitioner the sum of $5,500. On March 2, 1942, she loaned him an additional $2,000. For such loans she held his promissory note for that amount of $7,500, due in one year with interest at six per cent. Mrs. Nehls demanded security for this note, and an agreement, dated March 2, 1942, was executed pledging 40,000 plastic locking gas caps as security. Under this agreement Mrs. Nehls had the option to hold the merchandise for one year and, at the end of that period, if the note was not paid, the merchandise was to be accepted in full payment of the note. Petitioner testified that later Mrs. Nehls agreed to accept the merchandise in payment of the note, and the note thereupon was cancelled. Across the face of the note appears the notation "cancelled June 30, 1942." At some time, the date of which is not fixed *265 by this record, Mrs. Nehls purportedly entered into an agreement of resale of the above-mentioned merchandise to the Bethlehem Equipment Corporation, Ltd. This latter corporation, prior to and during 1942, was an outlet for goods manufactured by petitioner on both an outright sale and a commission basis. That petitioner had contacted the Bethlehem Company in connection with the sale of the merchandise in question is rather strongly indicated by a letter dated May 27, 1942, addressed to it, requesting its president, Mr. Davidson, to come to Detroit "to go over the gas cap situation." This communication follows closely the formal cancellation by the Firestone Tire & Rubber Company of its order for 40,000 gas tank caps and adapters, which bears date of May 26, 1942. Davidson did come to Detroit and the arrangement for the resale of the merchandise was concluded. That the arrangement between Mrs. Nehls and Bethlehem had been concluded prior to her acceptance of the merchandise in payment of the promissory note, which was on June 30, 1942, is established by the bills of lading and invoices bearing the name of Mrs. Nehls, dated as early, as June 12, 1942, and addressed to the Bethlehem Equipment *266 Corporation, Ltd., covering parts of the merchandise in question. This evidence indicates, rather clearly we think, that this transaction between petitioner and his wife was not really bona fide and at arm's length. Subsequent transactions between petitioner and his wife lend further support to such conclusion. This record establishes that the moneys received by Mrs. Nehls from Bethlehem from the sale of these 40,000 gasoline tank caps and adapters were deposited in Mrs. Nehls' personal bank account. On September 23, 1942, she transferred her then balance of $25,534.06 to a joint savings account, and later, in October, to a joint checking account in the name of "Charles H. Nehls or Mary W. Nehls." On June 29, 1942, petitioner's company invoiced to Mrs. Nehls 22,500 adapters at a price of $2,362.50. On October 12, 1942, a check for that amount payable to the petitioner's company was drawn by Mrs. Nehls on the joint checking account. Again, on December 16, 1942, petitioner's company invoiced to Mrs. Nehls 11,832 locking gas caps at a price of $5,916; and on December 12, 1942, a "Misc. lot gas caps" for a price of $390. These two items aggregate $6,306. On January 20, 1943, Mrs. Nehls *267 drew a check for $6,306 on the joint checking account payable to petitioner's company. Mrs. Nehls further testified that with some of the proceeds of the sale to the Bethlehem Equipment Corporation, Ltd., she bought bonds which she thought were taken in the joint names of herself and petitioner. Although the notes which petitioner gave to Mrs. Nehls bore interest, none was ever paid. Moreover, Mrs. Nehls, either prior or subsequent to the year 1942, did not engage in any business. The bills of lading and the invoices covering the shipments in question were prepared in petitioner's office and the shipments attended to by one of petitioner's employees. In the light of this record, we are convinced that there was no actual bona fide sale of the merchandise in question to Mrs. Nehls, and that in selling it to Bethlehem Corporation, Ltd., she was in fact the agent of petitioner. For the reasons stated, the respondent's determination that the profit derived from the sale of the above-described merchandise by Mrs. Nehls was the income of petitioner is sustained. Decision will be entered for the respondent.